Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James F. Holderman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 687 | **DATE** | 4/8/2003 |
| **CASE TITLE** | USA ex rel KIRK vs. TERHUNE et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ Local Rule 41.1  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Pursuant to Memorandum Opinion and Order entered this day, the petition for a writ of habeas corpus is denied. Any other pending motions are moot. This action is dismissed in its entirety.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | | number of notices | **Document Number** |
| ✓ | Notices mailed by judge's staff. | | APR 10 2003 | |
| | Notified counsel by telephone. | | date docketed | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | 4/8/2003 | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| | JS | courtroom deputy's initials | Date/time received in central Clerk's Office | JS mailing deputy initials |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, ex rel. LOUIS JAMES KIRK, a.k.a. Cinque Lewis | ) ) ) | DOCKETED |
| Petitioner, | ) ) ) | APR 1 0 2003 |
| | ) | 03 C 687 |
| v. | ) ) | |
| C.A. TERHUNE, Director California Department of Corrections, GEORGE M. GALAZA, Warden California State Prison, LISA MADIGAN, Attorney General of Illinois | ) ) ) ) ) ) ) ) | |
| Respondent. | ) ) ) | |

## MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, District Judge:

On January 30, 2003, petitioner Louis James Kirk, a.k.a. Cinque Lewis ("Lewis"), filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. For the following reasons, Lewis' petition for habeas relief is denied.

## PROCEDURAL BACKGROUND

Petitioner Lewis is currently a prisoner of the State of California under the name of James Kirk, but is subject to future incarceration in Illinois for a term of life imprisonment. On March 13, 1991, following a jury trial, Lewis, under the name of Cinque Lewis, was convicted in the Circuit Court of Cook County of murder and armed robbery. Thereafter, Lewis was sentenced to death on the murder conviction and to a term of thirty years imprisonment for the armed robbery conviction.

1

Lewis appealed to the Illinois Supreme Court, arguing, among numerous allegations which this court need not list, that Lewis was deprived a fair trial when evidence was admitted that the victim was five months pregnant at the time of her death. The Illinois Supreme Court affirmed the convictions for murder and armed robbery, and the thirty year sentence as to the armed robbery conviction, but reversed the death sentence and remanded the matter to the trial court for a new sentencing hearing. See People v. Lewis, 165 Ill.2d 305, 651 N.E.2d 72 (1995).

Upon remand, Lewis was sentenced to a term of natural life imprisonment. Lewis appealed his sentence to the Illinois Appellate Court, First District, and on September 28, 2001, the Illinois Appellate Court affirmed Lewis' sentence of natural life imprisonment. See People v. Lewis, 325 Ill.App.3d 435, 758 N.E.2d 438 (1st Dist. 2001). Next, Lewis sought leave to appeal to the Illinois Supreme Court, and on February 6, 2002, the Illinois Supreme Court denied Lewis' leave to appeal. Lewis' instant petition for writ of habeas corpus was filed on January 20, 2003, and raises the following claims: (1) whether the introduction of evidence that the victim was five months pregnant at the time of her death deprived Lewis of a fair trial under the due process clause, and (2) whether Lewis was deprived of his Sixth Amendment right to an impartial jury because the jurors were not questioned regarding the fact that the victim's pregnancy would be brought into evidence at trial.

## STANDARD OF REVIEW

A petitioner is required to exhaust the remedies available in the state court unless there is an absence of an available state corrective process or circumstances exist that render such process ineffective to protect the rights of the applicant. 28 U.S.C. § 2254(b)(1)(A). Once a petitioner exhausts his state court remedies, he may seek federal habeas review of his claims if they allege he is being held in violation of the Constitution, laws, or treaties of the United States. 28 U.S.C. §

2254(a). Before reviewing the substance of a petitioner's claim, the court must first address whether any of the claims have been procedurally defaulted. Procedural default can occur in three ways: (1) when the petitioner presents an issue within a petition never before presented to the state court for review, see Rodriguez v. Peters, 63 F.3d 546, 555 (7th Cir.1995), (2) when the petitioner failed to properly and fairly raise the federal element of an issue to the state court for review, see Verdin v. O'Leary, 972 F.2d 1467, 1472 (7th Cir.1992), (3) when the state court previously disposed of an issue on an independent and adequate state law ground, such as a state procedural bar, see Coleman v. Thompson, 501 U.S. 722, 729-30, 111 S.Ct. 2546 (1991); Braun v. Powell, 227 F.3d 908, 912 (7th Cir. 2000). The state court must have "clearly and expressly" relied on procedural default as the basis of its ruling. Harris v. Reed, 489 U.S. 255, 263, 109 S.Ct. 1038 (1989).

Federal courts may only review a defaulted claim if the petition shows cause for failure to raise the claim at the appropriate time and actual prejudice resulting from such failure. See Reed, 489 U.S. at 262, 109 S.Ct. 1038. Absent such a showing, a defaulted claim is reviewable only if refusal to consider it would result in a "fundamental miscarriage of justice," that is, where the "constitutional violation has probably resulted in the conviction of one who is actually innocent . . . ." Murray v. Carrier, 477 U.S. 478, 495-96, 106 S.Ct. 2639 (1986) (internal quotations and citations omitted). This standard requires a petitioner to show that it is more likely than not that no reasonable juror would have convicted him. Schlup v. Delo, 513 U.S. 298, 329, 115 S.Ct. 851 (1995).

If a federal claim has been properly presented to the state courts, a federal court may grant habeas relief only if the state court's decision on the merits of an issue was either "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the

Supreme Court of the United States," or "an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Brown v. Sternes, 304 F.3d 677, 690 (7th Cir. 2002). A state-court decision is "contrary to" clearly established precedents if it "applies a rule that contradicts the governing law set forth in our cases" or if it "confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Williams v. Taylor, 529 U.S. 362, 405-406, 120 S.Ct. 1495 (2000). The Supreme Court clarified that even if "the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable." Penry v. Johnson, 532 U.S. 782, 793, 121 S.Ct. 1910 (2001). A state court is not required to cite Supreme Court cases or even be aware of the cases, "so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, --- U.S. ----, 123 S.Ct. 362, 365 (2002). "The court may grant relief under the 'unreasonable application' clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case." Bell v. Cone, 535 U.S. 685, 122 S.Ct. 1843 (2002).

## ANALYSIS

I. Due Process

During the medical examiner's autopsy of the victim in this case, the examiner discovered that the victim was five months pregnant. Prior to petitioner Lewis' trial, the trial court denied Lewis' counsel's motion in limine to preclude evidence of the victim's pregnancy. At the guilt phase of Lewis' trial, over Lewis' counsel's objection and renewed motion in limine, the trial court allowed the prosecutor to elicit testimony from the medical examiner for Cook County that the deceased was pregnant, the fetus was female and measured 25 centimeters long, and was gestation

4

at five months. See People v. Lewis 165 Ill.2d 305, 328-29, 651 N.E.2d 72 (1995). Lewis cites to Planned Parenthood v. Casey, 505 U.S. 833, 112 S.Ct. 2791 (1992) and argues that the topic of the termination of life of an unborn son or daughter was not an issue in the determination of his guilt or innocence and was unfairly presented to the jury to arouse intense sympathy for a victim and hostility to an accused. Lewis argues that the introduction of this evidence over his trial counsel's objection prevented the jury from fairly listening and deciding the evidence, and therefore deprived Lewis of a right to a fair trial under the Due Process Clause.

Respondent argues first that Lewis did not fairly present this point as a constitutional issue to the Illinois Supreme Court because Lewis' brief devoted to this issue did not mention the Constitution. A district court may not grant habeas corpus relief unless the petitioner has exhausted his state court remedies. See 28 U.S.C. § 2254(b)(1)(A). To do so, one must present "fully and fairly his federal claims to the state courts . . . ." Chambers v. McCaughtry, 264 F.3d 732, 737 (7th Cir. 2001). Fair presentment "requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court . . . . The petitioner must have placed both the operative facts and the controlling legal principles before the state courts." Id. at 737-38.

Based upon this court's review of Lewis' brief to the Illinois supreme Court, this court finds that Lewis sufficiently presented the facts and legal argument relevant to this issue to the state court. Lewis' discussions of the operative facts supporting his legal argument in the present habeas are the same as those presented to the state courts. As to Lewis' presentation of his legal argument, in his opening brief to the Illinois Supreme Court, Lewis cited the Fourteenth Amendment and cited United States Supreme Court case Payne v. Tennessee, 501 U.S. 808, 111 S.Ct. 2597 (1991) to support his

argument that the admission of the evidence that the victim was pregnant prejudiced the guilt and sentencing phases of his trial. (See Respondent's Answer to Habeas Petition, Ex. A. at 48, 50-51). Lewis also raised this issue again in his petition for rehearing to the Illinois Supreme Court, arguing that the injection of the evidence of the deceased's pregnancy denied Lewis his constitutional rights to a fair trial and a trial by an impartial jury. (See Respondent's Answer to Habeas Petition, Ex. F. at 8-15.) This court finds Lewis' presentment of the same operative facts, and his citation to the Constitution, albeit brief, sufficiently satisfied state exhaustion requirement. This court therefore reaches Lewis' claim on the merits.

First, this court notes that in its opinion affirming Lewis' conviction, the Illinois Supreme Court did not cite to federal law or the controlling Supreme Court precedents with respect to Lewis' Due Process claim. Instead, the Illinois Supreme Court cited to and relied on its own prior decisions which condemned the introduction of otherwise irrelevant information about a crime victim's personal traits or familial relationships at the guilt phase of trial. See Lewis, 165 Ill.2d at 84-85, 651 N.E.2d 72. The state court's citation to federal law or Supreme Court precedents, however, is not required. "A state-court decision is contrary to our clearly established precedents if it applies a rule that contradicts the governing law set forth in our cases or if it confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent." Early v. Packer 123 S.Ct. 362, 365 (2002) (citing Williams v. Taylor, 529 U.S. 362, 405-06, 120 S.Ct. 1495 (2000). "Avoiding these pitfalls does not require citation of our cases--indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Id.

Under Illinois law and the cases the Illinois Supreme Court relied upon in making its decision, "[a] defendant's guilt must be established by legal and competent evidence" and when evidence that "has no relationship to the guilt or innocence of the accused, but normally serves only to prejudice the defendant in the eyes of the jury . . . is presented in such a manner as to cause the jury to believe it is material, its admission is highly prejudicial and constitutes reversible error unless an objection thereto is sustained and the jury instructed to disregard such evidence." People v. Hope, 116 Ill.2d 265, 275, 508 N.E.2d 202, 206 (Ill. 1986) (citing People v. Ramirez, 98 Ill.2d 439, 453, 457 N.E.2d 31 (Ill. 1983); People v. Jordan, 38 Ill.2d 83, 91, 230 N.E.2d 161 (Ill. 1967); People v. Bernette, 30 Ill.2d 359, 371, 197 N.E.2d 436 (Ill. 1964); People v. Dukes, 12 Ill.2d 334, 340, 146 N.E.2d 14 (Ill. 1957). This court does not find that the Illinois Supreme Court, in affirming Lewis' conviction, applied a rule which contradicts the governing law as Lewis' Due Process claim, as set forth in Supreme Court precedent. Therefore, in applying the § 2254(d) standard, this court need only determine whether the reasoning or result of the Illinois Supreme Court decision contradicts the Supreme Court precedent.

The requirement of due process guarantees that "no man's life, liberty or property be forfeited as criminal punishment for violation of [the] law until there ha[s] been a charge fairly made and fairly tried in a public tribunal free of prejudice, passion, excitement, and tyrannical power." Chambers v. Florida, 309 U.S. 227, 236-37, 60 S.Ct. 472, 477 (1940). In particular, when a state court admits evidence that is "so unduly prejudicial that it renders the trial fundamentally unfair, the Due Process Clause of the Fourteenth Amendment provides a mechanism for relief." Payne v. Tennessee, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608 (1991); see Darden v. Wainwright, 477 U.S. 168, 179-183, 106 S.Ct. 2464, 2470-72, 91 L.Ed.2d 144 (1986). In this case, this court must

consider whether the alleged unfair prejudice stemming from the evidence of the victim's pregnancy "firmly convinces us that but for the errors, the outcome of the trial probably would have been different," thus denying Latine his due process right to a fundamentally fair trial. Anderson v. Sternes, 243 F.3d 1049, 1055 (7th Cir. 2001).

In addressing Lewis' claim, the Illinois Supreme Court concluded first that the pregnancy evidence was irrelevant in that it bore no relationship to Lewis' guilt or innocence for the victim's murder, and had it been properly excluded, would have netted no appreciable damage to the State's case. Lewis, 165 Ill.2d at 84, 651 N.E.2d 72. The Illinois Supreme Court went on to find, however, that although the evidence was irrelevant and prejudicial, its admission "did not substantially compromise [Lewis'] right to a fair and impartial trial." Id. at 85, 651 N.E.2d 72. Even if the trial court erred in admitting that evidence, "not every evidentiary error constitutes a denial of due process. Rather, the question is whether the error produced a significant likelihood that an innocent person has been convicted." Anderson v. Sternes, 243 F.3d 1049, 1054 (7th Cir. 2001). In this case, the medical examiner's testimony was as follows:

> PROSECUTOR: As part of that internal examination, doctor, did you examine what's known as the genitourinary system?
> WITNESS: Yes.
> PROSECUTOR: What is the genitourinary system?
> WITNESS: Genitourinary system means genital system and the urinary system including female genitalia and kidneys.
> PROSECUTOR: What did your examination of Yvonne Donald reveal concerning that genitourinary system?
> DEFENSE COUNSEL: Objection, Judge. May I have a side bar?
> COURT: Yes, you may. Excuse us one minute, ladies and gentlemen.
> *******
> COURT: Ladies and gentlemen, the objection will be overruled.
> PROSECUTOR: Once again, Doctor An, what were the results of your genitourinary system examination?
> WITNESS: On the examination of the genitourinary system I observed she was

8

pregnant. And the fetus was a female fetus measuring 25 centimeters in length. The fetus was gestation at five months.

Lewis, 165 Ill.2d at 83, 651 N.E.2d 72.

In affirming Lewis' conviction, the Illinois Supreme Court found it significant that at trial, only one question was propounded to elicit the prejudicial testimony, and the prosecutor did not dwell on the fact of the victim's pregnancy. The court contrasted the situation in this case to those in People v. Hope, 116 Ill.2d 265, 508 N.E.2d 202 (1986) and People v. Bernette, 30 Ill.2d 359, 197 N.E.2d 436 (1964). In Hope, throughout the guilt phase of the trial, the prosecutor made reference to and elicited irrelevant and prejudicial testimony regarding the murder victim's family. Lewis, 165 Ill.2d at 85, 651 N.E.2d 72 (discussing People v. Hope, 116 Ill.2d 265, 508 N.E.2d 202 (1986)). Not only did the prosecutor reference the family in his opening statement, but he did so in direct examination of the decedent's widow and another witness. See id. Further, the prosecutor had admitted into evidence a photograph of the decedent and his family. See id. Finally, the prosecutor referenced the family in his closing argument. See id. Similarly, in Bernette, the widow of the murder victim was called by the State to testify and in response to the prosecution's questions, the widow testified that she lived with her four children and a baby-sitter; her oldest was six and her youngest seven months, and the youngest was the only one of the children born of her marriage to the deceased. See id. (discussing People v. Bernette, 30 Ill.2d 359, 197 N.E.2d 436 (1964)). Further, during final argument, the prosecutor argued the consequences suffered by the victim's family to the jury. See id.

In contrast, here, the prosecutor asked only one question to the examiner about the deceased victim's pregnancy. The prosecutor did not bring this fact up during his opening statement or closing

argument. Additionally, the testimony here, unlike that in Hope and Bernette, was not presented by a member of the victim's family. It was, instead, presented as part of the medical examiner's autopsy testimony. As such, the evidence "was not laden with the same level of emotional overtone as was the testimony in Bernette and Hope. Lewis, 165 Ill.2d at 85, 651 N.E.2d 72. Finally, although the Illinois Supreme Court agreed with Lewis that the trial court's overruling defense counsel's objection to the testimony tended to amplify its materiality, the court nonetheless, in measuring the conduct against the conduct in Hope and Bernette, still could not conclude that the manner in which the evidence was presented unduly focused the jury's attention on the materiality of this evidence.

Upon thorough review of the record and the parties' briefs, this court does not find that Illinois Supreme Court's reasoning and ultimate conclusion in this case contradicts the Supreme Court precedent on Due Process Clause violations. Although this court agrees with the Illinois Supreme Court's finding that the evidence of the deceased's pregnancy was irrelevant and prejudicial to Lewis, the unfair prejudice stemming from this evidence does not "firmly convince[] [this court] that but for the errors, the outcome of the trial probably would have been different . . . ." Anderson, 243 F.3d at 1055.

Here, the evidence at trial[1] revealed that on November 5, 1985, Brunell Donald ("Brunell"), then ten years old and in fifth grade, lived with younger sister and her mother, Yvonne Donald in an apartment in Chicago. On the afternoon of November 5, she was watching television when someone knocked on the door. When Brunell went to the door and asked who was there, she heard a reply

---

[1] 28 U.S.C. § 2254(e)(1) provides that determinations of factual issues by state courts are presumed correct, and may be rebutted only by clear and convincing evidence. Lewis has not presented clear and convincing evidence to rebut the factual issues determined by the state court in this case.

10

"C.Q." Brunell had seen C.Q. in the lobby of the apartment building on prior occasions, and had also heard his voice about five or ten times before, once in her home, and most recently on the morning of November 5 in the lobby of her apartment building. On that particular morning, Brunell had conversed with C.Q. concerning her mother.

Upon ascertaining C.Q.'s identity and receiving permission from her mother to open the door, Brunell took the key from her mother, unlocked the door, and opened it. C.Q. was there. Brunell identified petitioner Lewis in court as the person known to her as "C.Q." Once inside the apartment, Brunell went to a back room, while C.Q., or Lewis, spoke with Yvonne Donald in the living room. When Brunell heard her mother scream, she ran out and saw Lewis over her mother stabbing her. Lewis turned around and faced Brunell, who was screaming, and told her to stop screaming. When Brunell screamed again, Lewis told her to go to her room or he would kill both her and her mother. Brunell estimated her distance from defendant and her mother at the time to be about twenty-five feet. Lewis then took the door key out of Yvonne Donald's back pocket and went to the door with the knife and key in his right hand. When he had difficulty opening the door, he summoned Brunell to open the door and handed her the key. Brunell then opened the door for Lewis. Lewis then turned the key again, pulled it out of the lock and ran out of the apartment. After defendant left, Brunell went over to her mother, telephoned her cousin who was also living in the building, and then called the police.

When Chicago Police Officers Stephen Stukel and James Gildea arrived at the scene on November 5, 1985, they observed that the deadbolt lock on the door was in the locked position, but the door was open, lighting conditions in the apartment were good because it was daylight and the hallway light was on. Brunell appeared calm when Officer Stukel attempted to obtain a description

for the offender from her. Brunell was able to describe the assailant's height and weight by pointing to an officer whom she perceived to be of comparable height and weight. Brunell further stated what Lewis was wearing, that he was carrying a cane, and that he had a scar on the right side of his face and it met his mouth. Two days later, while at her aunt's home, Brunell chose Lewis' picture from a five picture array as the person who had stabbed her mother. In 1988, Brunell picked out Lewis in a police lineup. On cross-examination, Brunell testified that she told police at the crime scene, and detectives at the police station at a later date that the assailant had a scar on his face, although police reports do not indicate this. Brunell denied telling police Lewis had a slight or skinny build. Brunell also testified that she told the officers at the scene that she had seen Lewis that morning, however, did not tell police until 1988 about her conversation with Lewis that morning, nor did she tell them that she had seen Lewis on several prior occasions.

Lewis' former roommate, Kevin Keith ("Keith"), also testified at trial that Lewis moved in with Keith in early fall of 1985. Keith was acquainted with Yvonne Donald and had visited her apartment on two or three occasions, including once in October 1985 with Lewis. Keith recalled a conversation with Lewis in mid-October 1985 where Lewis claimed to have had difficulty collecting $200.00 Yvonne Donald owed Lewis for cocaine, and said "I'll kill the b----." Keith denied that Yvonne Donald owed Keith any money. On November 3, 1985, Keith was arrested for shooting a hold in the wall of his father's home during an argument. Keith remained in the Cook County jail until November 6, 1985. On his arrival home from jail, he met Lewis who was on his way out of the apartment and Lewis indicated to Keith that he was on his way to the laundromat. Although Lewis had not spoken of moving out, Keith never saw defendant again. The next day, Keith learned that Yvonne Donald had been killed. Subsequently, through three phone calls with the police and

12

an interview at the police station, Keith informed detectives that he believed Lewis murdered Yvonne Donald.

In his habeas petition, Lewis attacks Keith's credibility as a witness, contending that Keith had a history of mental illness, had been arrested for criminal damage to property and disorderly conduct, and was a cocaine abuser. At trial, Keith testified that he had never been hospitalized for cocaine dependency, had stopped using cocaine in October 1985, and was not using cocaine when he made the three phone calls to the police. Lewis also points to the fact that at the time of the incident, Lewis was a stocky teenager and that he had a prominent scar on this face, while the police reports from the scene of the crime, based on Brunell's statements, described the offender as male, black, 29-30 with a slight limp, but did not indicate facial scarring. At trial, Brunell denied telling police that the offender had a slight or skinny build, and instead she stated that she simply pointed to a police officer that looked his weight.

Upon review of the record, and consideration of Lewis' attack on Keith's credibility and Brunell's testimony and identification, this court does not find that the trial court's erroneous evidentiary ruling as to the victim's pregnancy was so prejudicial that it "compromised [Lewis'] due process right to a fundamentally fair trial." Anderson v. Sternes, 243 F.3d 1049, 1053 (7th Cir. 2001). Although Keith may have had a cocaine problem and have been involved in some criminal conduct during an argument with his father, this court does not find that Lewis has established a motive for Keith to falsify his testimony at trial about Lewis. Further, it appears from the record that Keith's testimony was a minor portion of the State's case. Given the strength of the prosecution's case against Lewis based on Brunell's testimony and identification of Lewis, this court does not find that the error "produced a significant likelihood that an innocent person has been convicted." Id.;

see also United States v. Rogers, 89 F.3d 1326, 1338 (7 th Cir. 1996) ("The Constitution entitles a criminal defendant to a fair trial, not a perfect one ....") Further, even if this court were to find that the admission of the medical examiner's testimony violated Lewis' constitutional rights, this court would find, for the same reasons articulated above, that the error did not have a "substantial and injurious effect or influence in determining the jury's verdict" under the applicable harmless-error standard. Brecht v. Abrahamson, 507 U.S. 619, 623, 113 S.Ct. 1710 (1993); see also Aleman v. Sterns, 320 F.3d 687, 689-91 (7th Cir. 2003).

## II. Fair and Impartial Jury

Next, Lewis complains that he was deprived of his Sixth Amendment right to an impartial jury because since the State dismissed the feticide count in advance of trial, Lewis presumed the pregnancy evidence would not be presented and therefore did not request appropriate inquiry during *voir dire* into the potential jurors' attitudes on pre-natal life issues. First, this court does not find this issue has been procedurally defaulted because the Illinois Supreme Court, although noting that Lewis had waived this issue, went on to discuss the merits of Lewis' claim. Robertson v. Hanks, 140 F.3d 707, 709 (7th Cir. 1998) (citing Harris v. Reed, 489 U.S. 255, 257-59, 266, 109 S.Ct. 1038 (1989)) ("[N]o procedural default occurs if the state appellate court's alternative finding constituted a finding on the merits.).

On the merits, the Illinois Supreme Court rejected Lewis' *voir dire* claim and found that "[r]egardless of any error in admitting the pregnancy evidence, feticide is not an issue in this case. *Voir dire* on the subject would not only have been improper, but would also have compounded the error." Lewis, 165 Ill.2d at 333-34, 651 N.E.2d 72. The Sixth Amendment and the Due Process clause of the Fourteenth Amendment guarantee a defendant the right to be tried before an impartial

jury. Morgan v. Illinois, 504 U.S. 719, 726, 112 S.Ct. 2222 (1992). *Voir dire* is the mechanism through which that right is assured. The trial court has wide discretion in choosing the course of inquiry during voir dire to ascertain whether the prospective jurors hold any bias or prejudice that would prevent them from reaching a verdict based solely on the evidence presented at trial. Mu'Min v. Virginia, 500 U.S. 415, 427, 111 S.Ct. 1899 (1991). Failure to ask a specific question rises to the level of constitutional error only when the trial is rendered fundamentally unfair as a result of the question's omission. Id. at 1905, 111 S.Ct. 1899.

This court finds that even although the trial court erred in admitting evidence of the victim's pregnancy, and beliefs about prenatal issues could present an area of potential bias, Lewis' right to a fundamentally fair trial has not been violated in this case. As detailed at infra section I, the medical examiner's testimony about the victim's pregnancy was elicited through only one question and the State did not refer to the pregnancy again during the trial. Based upon an examination of the record and the whole of the evidence the State presented against Lewis, this court is not "firmly convinc[ed] . . . that but for the errors, the outcome of the trial probably would have been different . . . ." Anderson, 243 F.3d 1049, 1055 (7th Cir. 2001). Therefore, this court concludes that Lewis' right to a fundamentally fair trial was not violated based upon a lack of *voir dire* of the potential jurors in this case about their views on prenatal life.

## CONCLUSION

For all the reasons stated above, petitioner Louis James Kirk, a.k.a. Cinque Lewis' petition for writ of habeas corpus is denied. This case is dismissed in its entirety. All pending motions are moot.

ENTER:

JAMES F. HOLDERMAN
United States District Judge

DATE: April 8, 2003

16

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

| | |
|---|---|
| USA ex rel KIRK | **JUDGMENT IN A CIVIL CASE** |
| v. | Case Number: 03 C 687 |
| TERHUNE et al | |

☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that the petition for a writ of habeas corpus is denied. This action is dismissed in its entirety.

Michael W. Dobbins, Clerk of Court

Date: 4/8/2003

J. Smith, Deputy Clerk